[No. 37412. En Banc. December 16, 1965.]

THE CITY OF KENNEWICK, *Respondent*, v. THE STATE OF WASHINGTON, *Appellant.*\*

*Reported in 409 P.2d 138.

*The Attorney General, Henry W. Wager* and *James A. Furber, Assistants,* for appellant.

*Horton & Wilkins,* by *Hugh B. Horton,* for respondent.

HUNTER, J.—The State Tax Commission, pursuant to RCW 82.16.020, assessed a public utility tax upon the revenues received by the City of Kennewick (hereinafter called the city) from the operation of its water system. The taxes here in question were assessed upon revenues received from January 1, 1953, to January 1, 1957, and from January 1, 1958, through December 31, 1961.

A public utility tax was also assessed upon the revenues received from prospective water users who had reimbursed the city, under its ordinance No. 843, for capital expenditures which enabled them to receive water service. These funds were designated by the city as "in aid of construction." June 12, 1962, this tax was reclassified by the tax commission under the "service" category of the business and occupation tax, RCW 82.04.290. The rates under the public utility tax are higher than those under the business and occupation tax. The tax commission retained a portion of the public utility tax it had collected and applied it to pay the reclassified business and occupation tax assessed, refunding the remainder to the city.

The tax commission also assessed a tax upon the revenues received by the city from the operation of its sewer system. This tax, likewise, was assessed under the "service" category of the business and occupation tax, because the operation of a sewer system is not a public utility, within the purview of the public utility tax act.

The city paid the taxes under protest and brought this action against the state to recover the taxes it had so paid. The trial court ordered the taxes refunded, and the state has appealed.

We first consider the public utility tax assessed upon the revenues derived from the operation of the city's

water system. The monthly rate paid by all water users was calculated to raise sufficient revenue not only for the cost of the operation and maintenance of the water system, but also an amount sufficient to pay the principal and interest on bonds issued for capital construction. The city contends that the revenue received from its water users to retire the bonds was not subject to the public utility tax because it was used exclusively to finance the capital expansion of its water system.

The city relies upon *King Cy. Water Dist. No. 68 v. Tax Comm'n*, 58 Wn.2d 282, 362 P.2d 244 (1961). In that case, two prospective water users were required to reimburse the water district for the cost of extending the city water system to their properties, which enabled them to become water users. The tax commission imposed a public utility tax upon these lump-sum reimbursement payments. We held that the payments made to reimburse the district for extending the facilities were not "operating revenue" within the meaning of the public utility tax statute. In reaching this conclusion, we said, p. 287:

> The appellant further argues that the revenue received for installations to the water system was given as consideration for delivery of water by the Water District and therefore it constituted "operating revenue." This argument overlooks the fact that the persons making the payments in question were not in the same category as that of water users, and they were not capable of becoming water users of the Water District until these additions or installations to the District's system were completed. The consideration was to qualify the parties or make them capable of purchasing water, rather than consideration for their purchase of water itself from the Water District over its distribution system.

This ruling was reaffirmed in *Seattle v. State*, 59 Wn.2d 150, 367 P.2d 123 (1961).

These cases are distinguishable from the case at bar (except as they relate to the "in aid of construction" funds) because they involved reimbursements to the water district for installation costs which arose prior to the time any water was delivered or sold to the users. These reimburse-

ments were not income from the operation of the "business."

In the present case, the operation of the water system by the city is clearly within the purview of the public utility tax.

RCW 82.16.020 provides in part:

There is levied and there shall be collected from every person a tax for the act or privilege of engaging within this state in any one or more of the businesses herein mentioned. The tax shall be equal to the gross income of the business, multiplied by the rate set out after the business, as follows:

(1) Railroad, express, railroad car, *water distribution,* light and power, telephone and telegraph businesses: Three percent: . . . . (Italics ours.)

RCW 82.16.010(4) provides:

"Water distribution business" means the business of operating a plant or system for the distribution of water for hire or sale; . . . .

The legislature has directed the tax commission to levy a public utility tax upon the gross income of the municipality's utility. Gross income is defined in RCW 82.16-.010(12) as follows:

"Gross income" means the value proceeding or accruing from the performance of the particular public service or transportation business involved, including operations incidental thereto, but *without any deduction on account of the cost of the commodity furnished or sold, the cost of materials used, labor costs, interest, discount, delivery costs, taxes, or any other expense whatsoever paid or accrued and without any deduction on account of losses;* . . . . (Italics ours.)

The act is clear and unambiguous. The tax is predicated upon the gross income received from the consumers for the utility service rendered. RCW 82.16.050 authorizes specific deductions to be made from gross income in computing the tax. No deduction is allowed for capital expenditures or interest.

The court erred in ordering the refund of the public utility tax assessed upon the gross revenue received from the operation of the city's water system.

The second category of tax involved is the reclassified business and occupation tax which the tax commission imposed upon the revenues received "in aid of construction." The stipulation of the appellant and the city in this regard is as follows:

The evidence of the City of Kennewick, if evidence were taken on this matter, would be that the "in aid of construction" funds referred to herein were monies received by the City of Kennewick pursuant to Kennewick city ordinance No. 843, a copy of which is attached hereto as Exhibit 8. These monies are in the same category as those involved in the case of *King County Water District No. 68 v. The State of Washington.*

Ordinance No. 843 of the city provides in part:

The general policy of the Water Department is that *a water main extension will be constructed at the expense of the property owners affected at the rate of $3.00 per running foot or $1.50 a front foot charge. No mains will be extended until at least 80% of the frontage has been paid for.* (Italics ours.)

In the *King Cy. Water Dist.* case, *supra,* we held that such reimbursements were not gross income, within the purview of the public utility tax statute. Our inquiry here is whether such reimbursement payments fall within "gross income of the business," as that term is defined in the business and occupation tax statute. Our examination of the statutory provisions for determining the imposition of a public utility tax and for that of a business and occupation tax discloses they are independent of each other and must be considered separately in resolving this inquiry. In the *King Cy. Water Dist.* case, *supra,* we also held that the public utility tax, as related to a water district, was limited to measurement on the basis of the gross operating revenue resulting from the distribution of water for hire or sale to water users of the system, in pursuance of our construction of RCW 82.16.010(4):

" 'Water distribution business' means the business of operating a plant or system for the distribution of water for hire or sale; . . ."

■ No such limitation exists in determining the imposition of a tax on the activity of a water utility under the "business and occupation tax." RCW 82.04.080, *infra*. In view of this distinction the "in aid of construction" revenues to the utility resulting from assessments against the property owners for the cost of extending water mains to their property, although not subject to the imposition of a utility tax, *King Cy. Water Dist.* case, *supra*, are clearly a part of the gross income of the business under RCW 82.04.080, *infra*, and are subject to measurement for the imposition of the business and occupation tax for the city's privilege of engaging in the activity of a water utility business.

The trial court erred in ordering the refund to the city of the assessments paid under the business and occupation tax upon the "in aid of construction" funds.

The third category of tax involved in this appeal is the business and occupation tax imposed upon the revenues received by the city from the operation of its sewer system.

The city makes basically the same argument in asserting the nontaxability of the sewer revenues as was made concerning the water revenues—that the revenues which are used to pay the interest on the bonds and to redeem the bonds which were issued to finance capital construction of the sewer facilities are not subject to the business and occupation tax.

The pertinent sections of the business and occupation tax statutes are:

"Person" or "company," herein used interchangeably, means any . . . municipal corporation . . . . RCW 82.04.030.

"Gross income of the business" means the value proceeding or accruing by reason of the transaction of the business engaged in and includes gross proceeds of sales, compensation for the rendition of services, gains realized from trading in stocks, bonds, or other evidences of indebtedness, interest, discount, rents, royalties, fees, commissions, dividends, and other emoluments however designated, all without any deduction on account of the cost of tangible property sold, the cost of materials used, labor costs, interest, discount, delivery costs, taxes, or

any other expense whatsoever paid or accrued and without any deduction on account of losses. RCW 82.04.080.

"Business" includes all activities engaged in with the object of gain, benefit, or advantage to the taxpayer or to another person or class, directly or indirectly. RCW 82.04.140.

"Engaging in business" means commencing, conducting, or continuing in business and also the exercise of corporate or franchise powers as well as liquidating a business when the liquidators thereof hold themselves out to the public as conducting such business. RCW 82.04.150.

There is levied and shall be collected from every person a tax for the act or privilege of engaging in business activities. Such tax shall be measured by the application of rates against value of products, gross proceeds of sales, or gross income of the business, as the case may be. RCW 82.04.220.

Upon every person engaging within this state in any business activity other than or in addition to those enumerated in RCW . . . ; as to such persons the amount of tax on account of such activities shall be equal to the gross income of the business multiplied by the rate of one percent. This section includes . . . persons engaged in the business of rendering any type of service which does not constitute a "sale at retail" or a "sale at wholesale." RCW 82.04.290.

(It should be mentioned that, since this action accrued, some of the statutes quoted herein have been amended in minor particulars not here pertinent. For example, "gross income" has been substituted for "gross operating revenue" in RCW 82.16.010(12), but the definitions of these terms are identical. In other sections, such prefatory words as "The term" or "The word" have been deleted. Counsel, in their briefs, have also recognized that these minor changes are not here material, and have relied upon the statutes now in effect. Therefore, we have quoted the applicable sections from the current statutes.)

■ There is nothing in the statutes which indicates that the legislature intended that a municipal corporation rendering a sewer service for which a fee is collected is to be exempt from the operation of the business and occu-

pation tax. It follows that a city which exacts a monthly charge from the users of its sewer system is rendering a service within the purview of RCW 82.04.290, *supra,* and that such service is a "business" activity for an "advantage to the taxpayer." The business and occupation tax assessment for this service is to be predicated upon the "gross income of the business," and is to be computed "without any deduction," except for those enumerated in RCW 82-.04.430. The legislature has not authorized the deduction of capital construction costs in computing gross income of the business.

The court erred in its determination that the business and occupation tax did not apply to the revenues received by the city from the operation of its sewer system.

The judgment of the trial court in ordering the refund of taxes by the state to the city is reversed as to all three categories considered in this appeal.

ROSELLINI, C. J., FINLEY, WEAVER, HAMILTON, and HALE, JJ., concur.

OTT, J. (concurring in part and dissenting in part)—In *King Cy. Water Dist. No. 68 v. Tax Comm'n,* 58 Wn.2d 282, 362 P.2d 244 (1961), this court held that, when a prospective water user repays a city for the cost of construction of a water main to the prospective user's premises, such payments are not subject to the state's public utility tax for the reason *"that money received as reimbursement for the cost of constructing, installing, and inspecting facilities* for the purpose of operating a water distribution system" does not come within the purview of the term *"gross operating revenue."* (Italics mine.) This decision is predicated upon the well established and sound business principle that *no income results from return of capital.* The rule announced in the cited case was reaffirmed as the law of this state in *Seattle v. State,* 59 Wn.2d 150, 367 P.2d 123 (1961).

It was stipulated by all parties to this appeal that, in the instant case, "These monies [in aid of construction] are in the same category as those involved in the case

of *King County Water District No. 68 v. The State of Washington.*"

The majority concede the law to be that money received as "reimbursement for the cost of constructing" is not "gross operating revenue" under the Public Utility Act, but hold that *"revenues* to the utility resulting from assessments against the property owners *for the cost of extending water mains to their property* . . . are clearly a part of the gross income of the business," and are subject to tax under the business and occupation tax. (Italics mine.)

The legislature, in the Business and Occupation Tax Act, has defined the term "gross income of the business" as follows:

"Gross income of the business" means the value proceeding or accruing by reason of the transaction of the business engaged in and includes *gross proceeds of sales, compensation* for the rendition of services, *gains realized* from trading in stocks . . . and other emoluments . . . . (Italics mine.) RCW 82.04.080.

I find nothing in this definition of "gross income of the business" which indicates a legislative intent that the reimbursement to a municipality of its cost for constructing water system extension lines is to be considered as *income* for tax purposes. Return of principal has never heretofore been regarded as income for tax purposes.

The legislative definition of "gross income of the business" is plain and unambiguous. In the instant case, to interpret it to include an excise tax on the return of capital is to read into the statute words which are not there, and to overrule by inference the well established law announced in *King Cy. Water Dist. No. 68 v. Tax Comm'n, supra,* and reaffirmed in *Seattle v. State, supra.*

Finally, when the water user has fully reimbursed the city of Kennewick for the cost of the extension of its water mains to his premises, this physical extension of the city's water system does not represent a taxable gain or profit, within the purview of the questioned definition, until such time as the city should sell the system, including the extension, at a profit.

For the reasons stated, the state should be required to refund to the city of Kennewick the excise tax it collected on funds the city received as "reimbursement for the cost of constructing."

In all other respects, I concur in the majority opinion.

HILL, J. and BARNETT, J. Pro Tem., concur with OTT, J.

February 25, 1966. Petition for rehearing denied.

*Reported in 409 P.2d 153.