[No. 1047-2.   Division Two.   November 18, 1974.]

THE CITY OF SEATTLE, *Appellant,* v. THE STATE OF
WASHINGTON, *Respondent.*

*A. L. Newbould, Corporation Counsel,* and *Arthur T. Lane, Assistant,* for appellant.

*Slade Gorton, Attorney General, Timothy R. Malone, Senior Assistant,* and *Henry W. Wager, Assistant,* for respondent.

PEARSON, C.J.—In this appeal we hold that the City of Seattle is entitled to a refund or credit for excise taxes paid on revenue received from customers of its Department of Lighting, where such revenue was received exclusively for the cost of conversion from an overhead to an underground electric power distribution system.

The City of Seattle, through its Department of Lighting, "Seattle City Light," engages in the business of furnishing electric power in Seattle and nearby areas. In most residential neighborhoods the electrical energy is supplied by means of an overhead distribution network. However, in recent years a program was undertaken whereby residents who desired an uncluttered vista could obtain electrical service by means of an underground distribution system if they agreed, either by direct negotiated contracts or by the formation of local improvement districts, to pay a portion of the costs of constructing the underground network. Such payments were not part of the utility's regular charge for electric service, but were separately billed as segregated amounts.

Prior to 1969, the State assessed the City a 3.6 percent public utility tax on the amount of customer contributions toward the construction of these underground facilities. The assessment was made ostensibly under the authority of RCW 82.16.020.[1] The City argues in this appeal that such payments are not subject to this particular tax. We agree.

---

[1] RCW 82.16.020, as amended by the Laws of 1967, 1st Ex. Sess., ch. 149, § 24, provided as follows:

"There is levied and there shall be collected from every person a tax for the act or privilege of engaging within this state in any one or more of the businesses herein mentioned. The tax shall be equal to the

There is no dispute regarding customer contributions after 1969, because following the enactment of Laws of 1969, 1st Ex. Sess., ch. 156, § 1 (RCW 82.04.417), such direct customer contributions towards the construction costs of capital facilities are expressly exempted from the public utility tax.[2]

In support of its argument that customer contributions paid exclusively for the purpose of constructing an underground electric distribution system are not subject to the public utility tax, the City relies primarily upon *King County Water Dist. 68 v. Tax Comm'n*, 58 Wn.2d 282, 362 P.2d 244 (1961); *accord, Seattle v. State*, 59 Wn.2d 150, 367 P.2d 123 (1961). There the court held that revenue received by a water district as reimbursement for the cost of constructing, installing, and inspecting new facilities necessary to operate a water distribution system to serve prospective customers was not revenue accruing from the *performance* or *operation* of the particular business, and therefore not taxable income within the purview of RCW 82.16

gross income of the business, multiplied by the rate set out after the business, as follows:

"(1) Railroad, express, railroad car, water distribution, light and power, telephone and telegraph businesses: Three and six-tenths percent;

"(2) Gas distribution business: Two and four-tenths percent;

"(3) Urban transportation business: Six-tenths of one percent;

"(4) Vessels under sixty-five feet in length, except tugboats, operating upon the waters within the state: Six-tenths of one percent;

"(5) Motor transportation and tugboat businesses and all public service businesses other than ones mentioned above: One and eight-tenths of one percent."

[2]RCW 82.04.417 provides:

"The tax imposed by chapters 82.04 and 82.16 RCW shall not apply or be deemed to apply to amounts or value paid or contributed to any county, city, town, political subdivision, or municipal or quasi municipal corporation of the state of Washington representing payments of special assessments or installments thereof and interests and penalties thereon, charges in lieu of assessments, or any other charges, payments or contributions representing a share of the cost of capital facilities constructed or to be constructed or for the retirement of obligations and payment of interest thereon issued for capital purposes.

"Service charges shall not be included in this exemption even though used wholly or in part for capital purposes."

as it then existed.[3] The "water distribution business" at issue in that case was statutorily defined by RCW 82.16.010(4) in terms essentially identical to the statutory definition of the "light and power business" at issue before us.[4]

In passing upon the statutory definition, the court commented as follows:

> The statute specifically provides that a " 'Water distribution business' means the business of operating a plant or system for the distribution of water for hire or sale." This presupposes the existence of a plant to operate. Constructing, installing, and inspecting facilities for the purpose of operating a plant do not constitute operations of such facilities as expressly provided for under this statutory definition. Thus it follows that money received as reimbursement for the cost of constructing, installing, and inspecting facilities for the purpose of operating a water distribution system would not be within the operation of the Water District's distribution business.

*King County Water Dist. 68 v. Tax Comm'n, supra* at 285.

The court further stated at page 287 that the revenue

---

[3]At that time RCW 82.16.020 provided that the tax was to be measured by the "gross operating revenue" of the business. Gross operating revenue was defined in RCW 82.16.010(12) as follows:

"[G]ross operating revenue" means the value proceeding or accruing from the performance of the particular public service or transportation business involved, including operations incidental thereto, but without any deduction on account of the cost of the commodity furnished or sold, the cost of materials used, labor costs, interest, discount, delivery costs, taxes, or any other expense whatsoever paid or accrued and without any deduction on account of losses; . . .

Chapter 82.16.020 currently provides that the tax is to be measured by the "gross income of the business"; *i.e.,* "gross income" has been substituted for "gross operating revenue." However, the change is not material because the definitions of these two terms are identical. *See* RCW 82.16.010(13); *Kennewick v. State,* 67 Wn.2d 589, 409 P.2d 138 (1965).

[4]RCW 82.16.010(4) and (5) provide:

"(4) 'Water distribution business' means the business of operating a plant or system for the distribution of water for hire or sale;

"(5) 'Light and power business' means the business of operating a plant or system for the generation, production or distribution of electrical energy for hire or sale; . . ."

received by the water district constituted consideration to qualify the parties, or make them capable of purchasing water, rather than consideration for the purchase of water itself. As such, the revenue was not taxable income, since the statutory scheme contemplated only the taxation of the revenue obtained from the distribution of water for hire or sale, and not of the revenue received for the construction costs of a distribution system.

In opposition to the argument of the City of Seattle, the State Tax Commission contends that the controlling rule of law in the instant case is stated in *Kennewick v. State,* 67 Wn.2d 589, 409 P.2d 138 (1965). That case involved a public utility tax assessed against revenues derived from the operation of the City of Kennewick's water system. The facts there disclosed that the monthly rate paid by all water users in the City of Kennewick was calculated to raise sufficient revenue not only for the cost of the operation and maintenance of the water system, but also an amount sufficient to pay the principal and interest on bonds issued for capital construction of an unspecified nature.

In ruling that the revenue received by the City from its regular water users to retire the bonds was subject to the public utility tax, the court quoted with approval from its earlier decision in *King County Water Dist. 68 v. Tax Comm'n, supra.* The court followed that decision, but concluded that the operation of the water system by the City of Kennewick was within the purview of the public utility tax by simply observing an obvious factual distinction between the two cases. In contrast to Kennewick's receipt of regular payments from all water users for services previously rendered during the month, the court noted that the revenue received by the King County Water District "involved reimbursements to the water district for installation costs which arose prior to the time any water was delivered or sold to the users." *Kennewick v. State, supra* at 591.

The *Kennewick* case is similar to the case at bar in

one regard, *i.e.,* both involve reimbursements to the public utility for construction costs arising at some point after an initial service was rendered to the consumer. However, this court can find nothing in the *Kennewick* case that negates the argument of the City of Seattle. The revenues received from City Light's customers exclusively for the cost of conversion from an overhead to an underground electric power system were revenues necessary to construct or establish a distribution system. They were not revenues accruing from "the business of operating a plant or system for the generation, production or distribution of electrical energy for hire or sale; . . ." RCW 82.16.010 (5).

It is clear to this court from the statutes and from the opinion in *King County Water Dist. 68 v. Tax Comm'n, supra,* that the taxable "gross income" which is within the purview of RCW 82.16 must accrue from the performance of the public service, in this case the operation of a plant or system to supply electrical energy, and not from customer contributions towards the capital costs of constructing such a system, underground or otherwise. *Kennewick v. State, supra,* does not purport to change the applicable legal principles, and in fact reaffirms the rule first announced by the court in the *King County* case and followed by the court in *Seattle v. State, supra.*

Moreover, the revenue at issue before the court in *Kennewick* is clearly distinguishable from the revenue received by the King County Water District and by Seattle City Light. In both the latter instances, the revenue proceeded from bilateral transactions whereby the customer was required to assume a separate and distinct obligation to pay the cost of constructing service lines peculiar and special to the property of the individual consumer. This obligation and payment was in no way connected with the general obligation of all the utility's customers to pay the monthly rate for services rendered.

On the other hand, the City of Kennewick was essentially attempting to exclude from the public utility tax

amounts that had been received by the City as a result of monthly charges made by the City to all its customers for the supply of water. The revenue received as a result of such monthly payments for services rendered is taxable gross income of the utility, pursuant to RCW 82.16, while the revenue received as a result of billing the customer for the cost of constructing a distribution system to his property is not.

The judgment of the trial court affirmed an order of the Board of Tax Appeals which denied the City's request for a refund or credit in the amount of the excess public utility taxes the City had paid. That judgment is hereby reversed.

ARMSTRONG and PETRIE, JJ., concur.