[No. 55049-7-I. Division One. January 30, 2006.]

SPRINT SPECTRUM, L.P./SPRINT PCS, *Appellant*, v. THE CITY OF SEATTLE, *Respondent*.

---

[15] *Id.*

340

*D. Bruce Lamka*, *Michele G. Radosevich*, and *Garry G. Fujita* (of *Davis Wright Tremaine, L.L.P.*), for appellant.

*Thomas A. Carr, City Attorney*, and *Carlton W.M. Seu, Assistant*, for respondent.

¶1 SCHINDLER, J. — Sprint Spectrum, L.P./Sprint PCS (Sprint) sells cellular service and equipment to customers throughout the United States. As a cellular business, Sprint is subject to the city of Seattle's telephone business utility tax. SEATTLE MUNICIPAL CODE (SMC) ch. 5.48. The telephone utility tax is based on the total gross income from Sprint's cellular business activity in Seattle. "Gross income" is defined as "the value proceeding or accruing from the sale of tangible property or service, and receipts (including all sums earned or charged, whether received or not) . . . ." SMC 5.48.020(B). Sprint contends the city of Seattle's definition of gross income is ambiguous because the amount Sprint charges its customers for the utility tax is not "value proceeding or accruing" directly from the sale of cellular service. Therefore, according to Sprint, those charges cannot be included in calculating the utility tax Sprint owes. We disagree. Sprint's decision to separately

charge its customers for the utility tax cannot change the fact that the tax is a part of the sales price Sprint charges for cellular services. In addition, the utility tax charge is a part of Sprint's income and, as a matter of law, is not a deductible business expense. We affirm the decision of the Seattle hearing examiner that the definition of gross income in SMC 5.48.020(B) is not ambiguous and the amount Sprint charges its customers for the utility tax must be included in calculating the gross income for Sprint's cellular business in Seattle.

*Facts*

¶2 The facts are not in dispute. Sprint is a digital wireless personal communications business, with headquarters in Kansas. Sprint provides wireless communications service and manages and maintains a network of cellular towers and cellular sites throughout the country. Sprint has a number of cellular sites and a retail store in Seattle.

¶3 As a cellular business, Sprint is subject to business and utility taxes imposed by both the State and the city of Seattle (the City).[1] The City's telephone utility tax is imposed on Sprint, not the consumer. *See* chapter 5.48 SMC (chapter titled Business Tax—Utilities); *see also* SMC 5.48.050 (listing types of businesses subject to the utility tax). The telephone utility tax is calculated based on total taxable business activity "equal to six (6) percent of the total gross income from such business provided to customers within the City." SMC 5.48.050(A). "Gross income" is the total amount "proceeding or accruing" from the sale of cellular service and includes "all sums earned or charged, whether received or not . . . ." SMC 5.48.020(B).

¶4 As part of the sales price for cellular service, Sprint charges the telephone utility tax to its customers. A "Seattle City Utility Users Tax" charge is separately identified on

---

[1] *See e.g.* ch. 82.04 RCW (State Business and Occupation Tax); ch. 82.16 RCW (State Utility Tax); ch. 5.45 SMC (Seattle Municipal Business License Tax).

the customer's monthly bill. Sprint did not include the utility tax amounts charged to customers when calculating the total gross income for the City's utility tax under SMC 5.48.020(B).

¶5 In 2003, the city of Seattle Department of Executive Administration, Division of Revenue and Consumer Affairs (the Department) conducted an audit of Sprint's financial records for January 1, 1997 through December 31, 2002. The Department concluded that the amounts Sprint charged its customers for the utility tax were improperly excluded from the calculation of total gross income.[2] The Department instructed Sprint to include the utility tax charges passed on to its customers in calculating gross income and assessed Sprint for the additional utility tax owed in the amount of $425,243 ($344,539 in principal and $80,704 in interest).[3]

¶6 Sprint appealed the Department's decision and the assessment to the city of Seattle Office of Hearing Examiner. Sprint argued the definition of "gross income" in SMC 5.48.020(B) was ambiguous, and therefore, it should be construed in favor of the taxpayer to exclude amounts charged for the utility tax.

¶7 Relying on the language of SMC 5.48.020(B) and reported Washington cases, the hearing examiner decided the definition of gross income in SMC 5.48.020(B) was not ambiguous and the amounts Sprint charged its customers for the utility tax should be included in calculating gross income. The hearing examiner concluded that Sprint's charge to its customers for the utility tax is "value proceeding or accruing" from Sprint's sale of cellular telephone service. "But for those sales to customers, the appellant would not receive the value of the utility tax that it passes on to customers."[4] The hearing examiner also concluded

---

[2] SMC 5.48.050(A), .020(B).

[3] The Department also assessed additional business and occupation taxes. Sprint challenges only the portion of the assessment attributable to the utility tax.

[4] Clerk's Papers (CP) 28, No. 9.

that because the utility tax is a business expense and SMC 5.48.020(B) unequivocally prohibits deduction for "any expense whatsoever," Sprint could not deduct the utility tax it charged to its customers in calculating gross income.

¶8 Sprint filed a petition for certiorari under chapter 7.16 RCW. The superior court affirmed the decision of the hearing examiner and ruled the income received by Sprint "to defray its Seattle utility tax, proceeds or accrues from the sale of services provided by Sprint to its customers and therefore constitutes gross income under the Seattle Municipal Code ('SMC') 5.48.020."[5] Sprint appeals.

## Analysis

¶9 For a writ of certiorari, appellate review is based on the administrative record and is limited to determining whether the hearing examiner's decision was arbitrary and capricious or contrary to law. *Dev. Servs. of Am., Inc. v. City of Seattle*, 138 Wn.2d 107, 115, 979 P.2d 387 (1999). Only questions of law are at issue in this appeal. We review issues of law de novo to determine whether the decision below was contrary to law. RCW 7.16.120(3); *Sunderland Family Treatment Servs. v. City of Pasco*, 127 Wn.2d 782, 788, 903 P.2d 986 (1995).

¶10 Sprint contends the hearing examiner erred in concluding that the definition of gross income in SMC 5.48.020(B) is unambiguous. Sprint argues that the amount Sprint charges customers for the utility tax is not "value proceeding or accruing" from the sale of service because the charges are for taxes, not for cellular service. Therefore, Sprint asserts the tax charges are not a part of "gross income" as defined in SMC 5.48.020(B). Sprint contends that because the definition of "gross income" is ambiguous, the court must construe the definition in favor of the taxpayer and exclude the amounts collected for the utility tax from the calculation of gross income. *Dep't of Revenue v. Hoppe*, 82 Wn.2d 549, 552, 512 P.2d 1094 (1973) (Ambig-

---

[5] CP 45.

uous revenue-generating statutes are "construed most strongly against" the taxing authority.); *Simpson v. Dep't of Revenue*, 141 Wn.2d 139, 149, 3 P.3d 741 (2000).

¶11 The City contends that the only benefit Sprint's customers receive from paying that portion of their bill identified as "Seattle City Utility Users Tax" is cellular service. According to the City, the utility tax charge to its customers is "value proceeding or accruing" from the sale of service and is a part of gross income as defined by SMC 5.48.020(B) because the utility tax charge is a part of the price Sprint charges for cellular service. The City also contends that, unlike a sales tax, which is imposed directly on the consumer, the utility tax is imposed on the business and is Sprint's obligation.[6] Because, as a matter of law, the utility tax is a nondeductible business expense, the City argues that it is of no consequence that Sprint segregates the utility tax it owes the City as a separate item on the customer's monthly bill for cellular service. We agree with the City.

¶12 Sprint is a telephone business that provides "access to a local network." SMC 5.30.060. SMC 5.48.050(A) imposes a utility excise tax on every telephone business equal to six percent of the total gross income from its business activity.

¶13 "Gross income" is defined in SMC 5.48.020(B) as:

the value proceeding or accruing from the sale of tangible property or service, and receipts (including all sums earned or charged, whether received or not), by reason of the investment of capital in the business engaged in, including rentals, royalties, fees or other emoluments, however designated (excluding receipts or proceeds from the use or sale of real property or any interest therein, and proceeds from the sale of notes, bonds, mortgages or other evidences of indebtedness, or stocks and the like) and without any deduction on account of the cost of the property sold, the cost of materials

---

[6] *See* RCW 82.08.050(2) (Washington's retail sales tax is paid by the buyer to the seller and held "in trust" by the seller and then paid to the Department of Revenue).

used, labor costs, interest or discount paid, or any expense whatsoever, and without any deduction on account of losses, including the amount of credit losses actually sustained by the taxpayer whose regular books or accounts are kept on an accrual basis.

¶14 Construction of a statute or municipal code is a question of law this court reviews de novo. *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 627, 869 P.2d 1034 (1994). The same rules of statutory construction apply when interpreting a municipal code. *City of Puyallup v. Pac. Nw. Bell Tel. Co.*, 98 Wn.2d 443, 448, 656 P.2d 1035 (1982). When interpreting a statute, a court must ascertain and carry out the legislature's intent. *Arborwood Idaho, L.L.C. v. City of Kennewick*, 151 Wn.2d 359, 367, 89 P.3d 217 (2004). Courts construe only ambiguous statutes. *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996). When the words in a statute are "clear and unequivocal," we must assume the legislative body meant exactly what it said and apply the statute as written. *Duke v. Boyd*, 133 Wn.2d 80, 87, 942 P.2d 351 (1997). An unambiguous statute is not subject to judicial construction and the court must derive its meaning from the plain language. *Group Health Coop., Inc. v. Dep't of Revenue*, 106 Wn.2d 391, 401, 722 P.2d 787 (1986). Unless otherwise defined, the words of a statute should be given their usual and ordinary everyday meaning. *Strenge v. Clarke*, 89 Wn.2d 23, 29, 569 P.2d 60 (1977). A statute is ambiguous if it is susceptible to more than one reasonable interpretation. *Seattle Filmworks, Inc. v. Dep't of Revenue*, 106 Wn. App. 448, 453, 24 P.3d 460 (2001).

¶15 We reject Sprint's argument that the definition of gross income in SMC 5.48.020(B) is ambiguous because the charge to its customers for the utility tax is not "value proceeding or accruing" directly from the sale of cellular service. There is no dispute that the utility tax is Sprint's obligation or that Sprint may pass on the tax it owes as part of the price it charges for cellular service. Because the cost of the utility tax is added to the price Sprint charges for

cellular service, the economic burden of Sprint's utility tax is borne by its customers. But we do not agree that Sprint's decision to charge its customers for the utility tax changes the fact that the customer is paying the sales price fixed by Sprint.

¶16 The charge to Sprint's customers for the utility tax is "value proceeding or accruing" from "the sale of . . . service" under SMC 5.48.020(B). The utility tax is a part of the consideration that Sprint's customers pay for cellular service and those charges are properly included in the calculation of Sprint's utility tax liability. Even though the utility tax is specifically segregated and identified as a charge to its customers, and the amount received is used for the sole purpose of defraying the utility tax Sprint must pay, the utility tax charge simply increases the price the consumer pays for cellular service. We conclude the plain language of the definition of "gross income" in SMC 5.48.020(B) unambiguously includes total receipts from Sprint's sale of cellular service, including the charge to its customers for Sprint's utility tax.

¶17 In addition, SMC 5.48.020(B) bars deduction of "any expense whatsoever" from the calculation of gross income for the telephone utility tax. Because the utility tax is an operating expense of a business, as a matter of law, the tax is not deductible. *State ex rel. City of Seattle v. Dep't of Pub. Utils.*, 33 Wn.2d 896, 902, 207 P.2d 712 (1949). (Taxes, as operating expenses, must necessarily be taken into account by utilities in setting rates.).

¶18 Our conclusion that SMC 5.48.020(B) unambiguously includes Sprint's utility tax charge is consistent with the Washington Supreme Court's decisions in *Public Utility District No. 3 of Mason County v. State*, 71 Wn.2d 211, 427 P.2d 713 (1967) and *City of Kennewick v. State*, 67 Wn.2d 589, 409 P.2d 138 (1965).

¶19 In *Public Utility District No. 3*, the court considered whether tax payments the utility separately billed to its customers to pay its state utility tax obligation could be excluded from the calculation of gross income. RCW 82-

.16.010(12), defined "gross income" for purpose of calculating the utility tax as follows:

> "Gross income" means the value proceeding or accruing from the performance of the particular public service or transportation business involved, including operations incidental thereto, but without any deduction on account of the cost of the commodity furnished or sold, the cost of materials used, labor costs, *interest, discount, delivery costs, taxes*, or any other expense whatsoever paid or accrued and without any deduction on account of losses.[7]

¶20 The court concluded the definition of gross income in RCW 82.16.010(12) was not ambiguous and included the amounts separately charged by the utility to its customers. First, the court noted that the statute explicitly lists "taxes" as a nondeductible expense. Second, the court held the utility tax charge was part of "gross income" because it was "value proceeding or accruing" from the utility's sale of service even though the tax was separately identified on the customer's bill and the receipts were used to pay the state utility tax. The court explained that by charging customers for the tax, the utility "adds to its 'gross income' and cannot thereafter make deductions therefrom in measuring its tax liability under the public utility tax, RCW 82.16." *Pub. Util. Dist. No. 3*, 71 Wn. 2d at 214. The court also explained that:

> [T]he tax receipts collected are part of the consideration given by the customer for electric services, regardless of the form of the district's billing, since they are operational expenses of the district directly connected with the performance of its particular public service.

*Id.*

¶21 *City of Kennewick* also supports the conclusion that the City's definition of gross income is not ambiguous and includes the utility tax Sprint charges its customers. In *City of Kennewick*, the utility's monthly charges included not only the costs of operation and maintenance of the water system but also the principal and interest on bonds issued to fund capital construction. The *City of Kennewick* court

---

[7] (Emphasis added.)

reached the same conclusion as the court in *Public Utility District No. 3*, even though the statutory definition of gross income did not specifically list capital expenditures or interest as nondeductible expenses. The court construed the same statutory definition, RCW 82.16.010(12), and held that the definition of gross income was "clear and unambiguous" and reimbursement from customers to cover the cost of retiring bonds was a part of the "gross income received from the consumers for the utility service rendered." *City of Kennewick*, 67 Wn.2d at 592. The court also held the definition of gross income in RCW 82-.16.010(12) did not allow deduction for "'any other expense whatsoever.'" *Id.* (emphasis omitted) (quoting RCW 82.16.010(12)).

¶22 Contrary to Sprint's contention, the decision of the hearing examiner is also consistent with this court's decision in *City of Seattle v. State*, 12 Wn. App. 91, 527 P.2d 1404 (1974). In *City of Seattle*, the city agreed to convert overhead electrical service systems to an underground service system if residents of the affected area agreed to pay the cost. A group of residents agreed to do so, and their bills included a separate charge for reimbursement of a portion of construction costs for the underground system. The State decided the reimbursements should be included in the calculation of gross income for the state utility tax and Seattle appealed.

¶23 This court disagreed with the State and concluded the payments for construction costs did not proceed or accrue from the operation of an electrical system to supply electrical energy and were, therefore, not a part of gross income.[8] In reaching this conclusion, the court distinguished the *City of Kennewick* case on the grounds that the city of Kennewick charged all its customers the cost to

---

[8] According to the statutory definition, gross income included the "value proceeding or accruing from the performance of the particular public service." (RCW 82.16.010(12)). And the "particular public service" was a "light and power business," which was defined as the "business of operating a plant or system for the generation, production or distribution of electrical energy for hire or sale." (RCW 82.16.010(5)).

retire its debt on bonds for construction and the charge was part of the consideration for water service. *City of Seattle*, 12 Wn. App. at 96-97. By contrast, the court explained that the reimbursement charges to Seattle for replacing the distribution system "proceeded from bilateral transactions whereby the customer was required to assume a separate and distinct obligation to pay the cost of constructing service lines peculiar and special to the property of the individual consumer. This obligation and payment was in no way connected with the general obligation of all the utility's customers to pay the monthly rate for services rendered." *City of Seattle*, 12 Wn. App. at 96.

¶24 This case is not like *City of Seattle*. The construction costs Seattle charged customers in *City of Seattle* for conversion of the distribution system was the legal obligation of the customers. Here, the utility tax is Sprint's obligation and is one of its operating expenses. The customers who paid the reimbursements for the replacement of the distribution system in *City of Seattle* received consideration separate and apart from the provision of electric service. As in *Public Utility District No. 3* and *City of Kennewick*, Sprint's customers receive no benefit or consideration for the utility tax payment separate and apart from cellular service.

¶25 Sprint also claims that SMC 5.30.035(D), the general definition of gross income, supports its position that the gross income utility tax definition in SMC 5.48.020(B) is ambiguous.[9] Because SMC 5.30.035(D) expressly states that taxes are not deductible, Sprint claims that because "taxes" are omitted from the definition in SMC 5.48.020(B), gross income cannot include the utility tax charge. The definition of gross income for purposes of the City's utility tax was enacted in 1932 and precedes enactment of the general definition of gross income in SMC 5.30.035(D).

---

[9] The SMC revenue and taxation section contains a general definition chapter, chapter 5.30 SMC. Under the SMC, general definitions apply, unless as here, the specific taxation sections, i.e., Business License Tax (ch. 5.45 SMC), Business Tax-Utilities (ch. 5.48 SMC), Leasehold Excise Tax (ch. 5.56 SMC), Sales and Use Tax (ch. 5.60 SMC), contain specific definitions.

Therefore, we cannot assume a legislative intent to exclude the utility tax based on the different language.[10]

¶26 Sprint also asserts that the City's definition of gross income is ambiguous because like Sprint, the majority of audited taxpayers construe the definition of gross income to exclude utility tax payments. The record does not support Sprint's argument. The administrative record does not indicate what percentage of audited taxpayers excluded the utility tax charge in calculating gross income.[11]

¶27 Sprint also relies on the *Report to the Legislature on Taxation of Cellular Communications in Washington State* (Report) to argue that the City knew its definition of gross income was ambiguous.[12] One of the findings in the Report is that "some cities" do not clearly define gross income. The Report recommends that cities adopt a uniform and clear definition of gross income but did not recommend a particular definition. The Report also does not specifically address any city's definition of gross income but states that the "prevailing definition" of gross income includes utility taxes "passed on" to customers.[13] Contrary to Sprint's argument, the Report does not suggest

---

[10] Citing *Bennett v. Hardy*, 113 Wn.2d 912, 926, 784 P.2d 1258 (1990), Sprint erroneously assumes the utility tax definition was adopted in 1973, after the enactment of both the general definition and the Supreme Court decision in *Public Utility District No. 3*, to argue the City did not intend to include the utility tax in the gross income definition.

[11] The declaration of Joseph Cunha, the audit supervisor of the Department, states that after reviewing the Department's documents from 1994 through 2003, he found four documents pertaining to utility tax payments collected from customers and the exclusion of those payments from the calculation of gross income. But Cunha did not state how many taxpayers were audited between 1994 and 2003.

[12] WASH. STATE DEP'T OF REVENUE, REPORT TO THE LEGISLATURE ON TAXATION OF CELLULAR COMMUNICATIONS IN WASHINGTON STATE (Nov. 1993) (on file with Dep't of Revenue); Opening Br. of Appellant, App. B, ch. 5, at 9.

[13] The Report noted the cellular industry's complaint that because customer tax payments are generally included in gross income, the effective rate of taxation in some areas was as high as 6.38 percent. *Id.* We disagree with Sprint's characterization of the inclusion of the income received for taxes as "tax on tax." As the court noted in *Public Utility District No. 3*, a higher effective taxation rate is the result of Sprint's decision to increase its gross income by billing its customers for the utility taxes.

that the City's definition is ambiguous. In fact, the Report indicates that the City's definition, by including utility taxes passed on to customers, is in line with the "prevailing definition" of gross income as understood by the telecommunications industry.

¶28 Sprint suggests that the Report and the decision in *Public Utility District No. 3* required the City to amend its definition and identify utility taxes as nondeductible. Because the definition of gross income in SMC 5.48.020(B) is not ambiguous, we conclude the City was not required to amend the definition of gross income for purposes of calculating the telephone utility tax.

*Conclusion*

¶29 "Gross income" as defined in SMC 5.48.020(B) unambiguously includes the amount Sprint separately charges its customers for utility taxes. As in *Public Utility District No. 3* and *City of Kennewick*, we conclude the tax charge is "value proceeding or accruing" from the provision of cellular service.[14] The utility tax is Sprint's legal obligation and, as a matter of law, is an operating expense that cannot be deducted from the calculation of gross income under SMC 5.48.020(B). We affirm the hearing examiner's decision.

Cox, C.J., and COLEMAN, J., concur.

Review denied at 158 Wn.2d 1015 (2006).

---

[14] This court, in an unpublished decision, *Puget Sound Energy v. City of Redmond*, noted at 97 Wn. App. 1075 (1999), considered a virtually identical definition of "gross income" in a city of Redmond ordinance and concluded the definition was ambiguous. To the extent our decision is inconsistent with *Puget Sound Energy*, we disagree with its analysis. We note that the decision in *Puget Sound Energy* did not address *City of Kennewick* and did not fully address the analysis in *Public Utility District No. 3*.