259 P.3d 345 (2011)
PUGET SOUND ENERGY, INC., Appellant,
v.
CITY OF BELLINGHAM, FINANCE DEPARTMENT, Respondent.
No. 65928-6-I.
Court of Appeals of Washington, Division 1.
August 29, 2011.
*346 Robert L. Mahon, Perkins Coie LLP, Seattle, WA, for Appellant.
Peter M. Ruffatto, Office of the City Attorney, Bellingham, WA, Kari Sand, Kenyon Disend PLLC, Issaquah, WA, for Respondent.
DWYER, C.J.
¶ 1 As the result of an audit conducted on its behalf, the city of Bellingham assessed tax and penalties against Puget Sound Energy, Inc. (PSE), which provides electric light and power to customers living within the city. PSE thereafter filed a complaint seeking a judgment declaring the city's tax assessment illegal and ordering a refund of the taxes and penalties imposed. Because PSE has not demonstrated that the tax assessment improperly subjected certain of its revenue to city utility tax, the trial court did not err by granting summary judgment in favor of the city.

I
¶ 2 In 2008, the city of Bellingham's contract auditors conducted a business and occupation (B & O) tax and utility tax audit of PSE for the period of time from January 1, 2004 to September 30, 2008 (the audit period).
¶ 3 During the audit period, PSE had paid various city taxes on its business activities within the city. PSE paid city utility tax on the revenue that it received from both the "per kilowatt hour energy charges" and the "basic or customer charges" paid by its Bellingham customers. Clerk's Papers (CP) at 122. However, PSE paid city B & O tax, rather than city utility tax, on other revenue that it received from its Bellingham customers. *347 For example, PSE paid city retail B & O tax on the revenue that it received from business activities defined by PSE as "sales and leases of tangible personal property to customers located in Bellingham." CP at 122. In addition, PSE paid city B & O tax under the "service and other" classification on the revenue that it received from "setting up accounts for prospective electricity customers (billing initiation charges); connecting, reconnecting, and disconnecting prospective or former electricity customers to or from the electricity grid (connection and reconnection charges and disconnection visit charges); and receiving late payments (late payment fees)." CP at 123.
¶ 4 Based upon the audit, the city issued an assessment against PSE in the amount of $919,662.11consisting of $680,316.76 in city utility tax and $239,345.35 in penalties. The assessment was based upon the city's determination that certain revenue upon which PSE had paid city B & O tax was, instead, properly subject to city utility tax. PSE paid the assessment in full.
¶ 5 PSE thereafter filed a "refund and declaratory judgment action challenging the legality of the imposition of City of Bellingham utility tax," in which PSE alleged that the city had unlawfully imposed utility tax on "retail sales of tangible personal property and other non-utility revenue." CP at 380. PSE also challenged the city's inclusion of utility tax charges collected by PSE from its Bellingham customers within the "gross income" amount subject to city utility tax. CP at 380.
¶ 6 During discovery, the city issued an interrogatory requesting that PSE "identify all types of revenues that PSE claims are not subject to" the city utility tax. CP at 75. PSE answered:
PSE claims that only its gross income from selling electricity within the City is subject to City utility tax, BMC 6.06.050.D. All other revenue is "non-utility revenue" not subject to City utility tax, including revenue from sales of steam, retail sales and leases of tangible personal property other than steam, transformer rental charges, late payment fees, billing initiation charges, connection and reconnection charges, disconnection visit charges, and basic charges.
CP at 75.
¶ 7 Subsequently, the parties filed cross motions for summary judgment, agreeing that no issues of material fact were in dispute. The trial court granted the city's motion for summary judgment, dismissing PSE's declaratory judgment action.
¶ 8 PSE appeals.

II
¶ 9 PSE first contends that, based upon the plain language of the city utility taxation ordinance, those activities that PSE defines as "non-utility" activities are not subject to the city utility tax. We disagree.
¶ 10 "[T]he proper construction of a city taxation ordinance is a legal question that is reviewed de novo on appeal, but the `burden is on the taxpayer to prove that a tax paid by him or her is incorrect.'" Avanade, Inc. v. City of Seattle, 151 Wash.App. 290, 297, 211 P.3d 476 (2009) (quoting Group Health Coop. v. City of Seattle, 146 Wash.App. 80, 88, 189 P.3d 216 (2008)). The same rules of construction that apply to interpretations of statutes also apply to interpretations of municipal ordinances. City of Puyallup v. Pac. Nw. Bell Tel. Co., 98 Wash.2d 443, 448, 656 P.2d 1035 (1982). "An unambiguous statute is not subject to judicial construction and the court must derive its meaning from the plain language." Sprint Spectrum, LP/Sprint PCS v. City of Seattle, 131 Wash.App. 339, 346, 127 P.3d 755 (2006). "A statute is ambiguous if it is susceptible to more than one reasonable interpretation." Sprint Spectrum, 131 Wash.App. at 346, 127 P.3d 755.
¶ 11 The city's utility taxation ordinance levies a six percent tax against "every person engaged in or carrying on the business of selling or furnishing electric light and power." Bellingham Municipal Code (BMC) § 6.06.050(D). The electric utility tax is imposed upon "the total gross income from such business in the city." BMC § 6.06.050(D).
¶ 12 PSE seeks a narrow interpretation of the city utility taxation ordinance in which only the revenue that it receives from "per *348 kilowatt hour energy charges" and "basic or customer charges" is subject to the six percent utility tax rate. In so doing, PSE asserts that it is subject to the city utility tax only for its specific activities of "selling or furnishing electric light and power." Br. of Appellant at 7. This is incorrect.
¶ 13 In fact, the language of the city's taxation ordinance is not so restrictive. Rather, the ordinance provides that the electric utility tax be levied against persons engaged in "the business of selling or furnishing electric light and power." BMC § 6.06.050(D) (emphasis added). Contrary to PSE's assertion, "the business" of selling or furnishing light and power is not limited to the actual provision of electricity. Rather, it encompasses the entire commercial enterprise of selling or furnishing electric light and power. See WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 302 (3rd ed. 2002) (defining "business" as "a commercial or industrial enterprise"). Similarly, the tax is imposed upon "the total gross income from such business," BMC § 6.06.050(D) (emphasis added), not upon the total gross income obtained solely from the provision of the electricity itself. Thus, the ordinance unambiguously states that the utility tax applies to more than simply the revenue that PSE receives through per kilowatt hour and basic customer charges.
¶ 14 Moreover, PSE has the burden of proving that the city's tax assessment is improper. See Avanade, 151 Wash.App. at 297, 211 P.3d 476. However, PSE fails to explain why those activities that it defines as "non-utility" activities are not part of its "business of selling or furnishing electric light and power," BMC § 6.06.050(D), and, thus, not subject to city utility tax. PSE characterizes those activities upon which it paid city retail B & O tax as "sales and leases of tangible personal property," which it contends "consisted of leases of . . . hardware, software, and equipment to Quanta Services, Inc." CP at 122-23. However, PSE does not assert that these activities are unrelated to its business of selling electric light and power, and the lease agreement indicates that Quanta's use of the leased property was restricted to activities connected to the performance of certain obligations to PSE.[1] In addition, PSE fails to explain why those activities upon which it paid city B & O tax under the "service and other" classificationincluding billing initiation charges, connection and reconnection charges, disconnection visit charges, and late payment feesare not part of its business of selling or furnishing electric light and power.[2] Because PSE bears the burden of proving that the city's tax assessment is incorrect, the tax assessment must stand unless PSE demonstrates that these activities are not part of its electric utility business. PSE may not simply reclassify its activities in order to avoid the city's utility taxation ordinance.
¶ 15 The city's utility taxation ordinance unambiguously levies an electric utility tax against any person engaged in "the business of selling or furnishing electric light and power." The broad language of the ordinance indicates that its scope is not restricted only to revenue obtained through the actual provision of electricity. PSE has not demonstrated that those activities that it defines as "non-utility" activities are not a part of its "business of selling or furnishing electric light and power." BMC § 6.06.050(D). Absent such a showing, and based upon the plain language of the city's taxation ordinance, the tax assessment against PSE was proper.

III
¶ 16 PSE further contends that the city's tax assessment violates the statutory *349 rate limitation and uniformity requirement set forth in RCW 35.21.710 and constitutional limitations imposed by the equal protection clause of the United States Constitution and our state's privileges and immunities clause. We disagree.
¶ 17 RCW 35.21.710 provides that "[a]ny city which imposes a license fee or tax upon business activities consisting of the making of retail sales of tangible personal property which are measured by gross receipts or gross income from such sales, shall impose such tax at a single uniform rate upon all such business activities." That rate must not exceed 0.2 percent. RCW 35.21.710.
¶ 18 Contrary to PSE's assertion, RCW 35.21.710 is not applicable here. As explained above, PSE has not demonstrated that the city improperly assessed city utility tax on the revenue defined by PSE as "non-utility revenue." As such, PSE has not demonstrated that such revenue was obtained through retail sales and, therefore, properly subject to city B & O retail tax, BMC § 6.04.050(D), rather than city utility tax, BMC § 6.06.050(D). Thus, the taxes were not imposed upon "business activities consisting of the making of retail sales," as required in order for RCW 35.21.710 to apply, notwithstanding that PSE categorized various of its activities as such.
¶ 19 Moreover, "a city . . . may define its taxation categories as it sees fit unless it is restrained by a constitutional provision or legislative enactment." Commonwealth Title Ins. Co. v. City of Tacoma, 81 Wash.2d 391, 394, 502 P.2d 1024 (1972). Thus, PSE's contention that many of its so-called "non-utility" activities are subject to state B & O tax, rather than state utility tax, has no bearing on whether such activities are properly subject to city utility tax. See Commonwealth Title, 81 Wash.2d at 393-94, 502 P.2d 1024; see also Enterprise Leasing, Inc. v. City of Tacoma, 139 Wash.2d 546, 988 P.2d 961 (1999); cf. City of Tacoma v. Seattle-First Nat'l Bank, 105 Wash.2d 663, 717 P.2d 760 (1986) (holding that the city was bound by the state's B & O tax classifications for financial institutions because the statute authorizing municipalities to impose such taxes provided that the definitions set forth in the statute "shall be applied" to any such tax imposed by a municipality). Because the city is not required to classify for taxation purposes the activities of PSE in the same manner as does the state, the city is free to subject PSE's so-called "non-utility" revenue to the city utility tax. As such, RCW 35.21.710, which sets forth the rate limitation and uniformity requirement for retail taxation, is not applicable here.
¶ 20 For the same reason, PSE's contention that the city's tax assessment violates the federal and state constitutions also fails. Because PSE has not shown that the city improperly assessed city utility tax upon that revenue defined by PSE as "non-utility revenue," PSE cannot demonstrate that the city has improperly treated it unlike others in the same class, as required in order to establish a violation of either the equal protection clause of the United States Constitution, U.S. CONST, amend. XIV, § 1,[3] or our state constitution's privileges and immunities clause, WASH. CONST, art. I, § 12.[4] PSEan electric utility businessis not within the same class as retailers and services providers, which are subject to city B & O tax. So long as the city's taxation of PSE is consistent with its taxation of other utilitiesand PSE has provided no evidence to the contraryno equal protection clause or privileges and immunities clause violation has been shown to exist. See, e.g., KMS Fin. Servs., Inc. v. City of Seattle, 135 Wash.App. 489, 498, 146 P.3d 1195 (2006) (noting that legislative classifications violate the Fourteenth Amendment and article I, § 12 only where the legislation applies differently to persons within the same class) (quoting City of Seattle v. Rogers *350 Clothing for Men, Inc., 114 Wash.2d 213, 234-35, 787 P.2d 39 (1990)).
¶ 21 The city need not classify PSE's activities for taxation purposes in the same manner as does the state, and, here, the city properly determined that the revenue obtained from those activities defined by PSE as "non-utility" activities is subject to city utility tax. Consequently, the city's tax assessment violates neither RCW 35.21.710 nor the federal or state constitutions.

IV
¶ 22 PSE finally contends that the city's tax assessment improperly included in PSE's gross income the revenue from "utility tax charges" that PSE collects from its Bellingham customers in order to pay the city utility tax. We disagree.
¶ 23 "Gross income," for purposes of the city utility tax,
means the value proceeding or accruing from the sale of tangible property or service, and receipts, including all sums earned or charged, whether received or not, by reason of the investment of capital in the business engaged in, including rentals, royalties, fees or other emoluments, however designated, excluding receipts or proceeds from the use or sale of real property or any interest therein, and proceeds from the sale of notes, bonds, mortgages, or other evidences of indebtedness, or stocks and the like, and without any deductions on account of the cost of the property sold, the cost of materials used, labor costs, interest or discount paid, or any expense whatsoever, and without any deduction on account of losses.
BMC § 6.06.020(A) (emphasis added).
¶ 24 We have recently held that the definition of "gross income" in the city of Seattle's utility taxation ordinance, which is identical to the definition herein in all relevant respects, unambiguously included the utility tax charges collected by a company in order to pass the cost of the utility tax on to its customers. Sprint Spectrum, 131 Wash.App. at 346-47, 127 P.3d 755. There, we determined that, although Sprint passed on to its customers the tax that it owed to the city, the utility tax was Sprint's obligation, not that of its customers. Sprint Spectrum, 131 Wash.App. at 346-47, 127 P.3d 755. We noted that "[t]he utility tax is a part of the consideration that Sprint's customers pay for cellular service" and deemed important the fact that Sprint's customers received no benefit for the utility tax payment apart from obtaining cellular service from Sprint. Sprint Spectrum, 131 Wash.App. at 347, 127 P.3d 755. Indeed, the utility tax charge simply increased the price that the consumers paid to Sprint in exchange for cellular service. Sprint Spectrum, 131 Wash.App. at 347, 127 P.3d 755. Thus, we determined that "those charges are properly included in the calculation of Sprint's utility tax liability." Sprint Spectrum, 131 Wash.App. at 347, 127 P.3d 755.
¶ 25 Similarly, here, the fact that PSE passes on to its customers the utility tax imposed upon PSE by the city does not make that tax the obligation of PSE's customers. Moreover, PSE's customers receive no additional consideration in exchange for paying this charge; rather, they receive only electric light and power service. As in Sprint Spectrum, the utility tax imposed here is simply one of PSE's operating expenses. As such, the revenue that PSE receives by virtue of charging its customers for the utility tax is a part of the "value proceeding or accruing" to PSE, see BMC § 6.06.020(A), and, thus, is properly included in PSE's gross income subject to city utility tax.[5]
*351 ¶ 26 Because the revenue that PSE receives by virtue of passing the city utility tax on to its customers is "value proceeding or accruing" to PSE, such revenue is properly subject to the city utility tax. Thus, the city's tax assessment did not improperly include that revenue in calculating PSE's utility tax liability.
¶ 27 Affirmed.
We concur: SCHINDLER and ELLINGTON, JJ.
NOTES
[1] The city asserts that Quanta's obligations to PSE, as referenced in the lease agreement, involve utility construction, operation, and maintenance services for PSE, see Br. of Resp't at 6 n. 3, thus indicating that the revenue that PSE obtained by virtue of its lease with Quanta may, indeed, be a part of its electric utility business. In any event, PSE has not demonstrated otherwise and has the burden of so doing.
[2] During the audit period, PSE also engaged in sales of steam, for which it paid city B & O tax under the "service and other" classification. CP at 122. However, the proper taxation of such sales is not an issue in this appeal, as the parties have resolved that issue through settlement.
[3] The Fourteenth Amendment to the United States Constitution provides that "[n]o state shall. . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.
[4] Article I, § 12 of the Washington State Constitution provides that "[n]o law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations."
[5] PSE contends that the facts of this case are distinguishable from those of Sprint Spectrum, in that PSE is a regulated utility that is required to pass utility taxes on to its customers. However, even if this is so, the revenue that PSE collects from its customers as utility tax charges is "value proceeding or accruing" to PSE, see BMC § 6.06.020(A), regardless of whether PSE chooses to or is required to pass on the tax.

PSE additionally contends that, at least during that part of the audit period occurring prior to our decision in Sprint Spectrum, it was required to adhere to our earlier decision in Puget Sound Energy, Inc. v. City of Redmond, noted at 97 Wash.App. 1075, 1999 WL 988118 (1999). However, our decision in that case was specific to the city of Redmond's taxation ordinance. The city of Bellingham, which was not a party to that action, was not precluded by our decision in that case from taxing PSE in the manner that it did here.