[No. 75821-2. En Banc.]
Argued June 23, 2005.    Decided August 11, 2005.

ELAINE WILLMAN ET AL., *Petitioners*, v. THE WASHINGTON UTILITIES AND TRANSPORTATION COMMISSION ET AL., *Respondents*.

*Eric E. Richter* (of *Henke & Richter*), for petitioners.

*Mary E. Crego, Louis D. Peterson,* and *John L. West* (of *Hillis Clark Martin & Peterson, P.S.*); *Michael P. O'Connell, Jill D. Bowman* and *James M. Van Nostrand* (of *Stoel Rives, L.L.P.*) (*Scott J. Kaplan,* of counsel); and *Robert M. McKenna, Attorney General,* and *Robert D. Cedarbaum, Senior Counsel,* for respondents.

*Robert K. Costello, Deputy Attorney General,* and *Simon J. Ffitch, Senior Assistant Attorney General,* on behalf of the Public Counsel Section of the Attorney General's Office, amicus curiae.

¶1 C. JOHNSON, J. — This case involves whether the Washington Utilities and Transportation Commission (WUTC) properly allowed utilities to take costs imposed upon them by the Yakama Indian Nation (Nation) and pass them on to the bills of all customers, including non-Indian residents, living within the Yakama reservation.

FACTS

¶2 In 2002, the Nation passed an ordinance[1] requiring all utilities operating within the external boundaries of its reservation to pay a fee equal to three percent of the utility's gross operating revenue within the reservation. The ordinance also requires that the utilities enter into franchise agreements with the Nation, whereby certain administrative, licensure, and legal standards must be met. Clerk's Papers (CP) at 11.

¶3 Cascade Natural Gas Corporation and PacifiCorp (which operates as Pacific Power and Light Company) provide utility services to the Yakama reservation and are subject to the three percent charge. In response, they filed tariff revisions with the WUTC in an effort to pass on these costs to all customers within the Yakama reservation, including nonmembers of the Nation. If a charge is considered a tax, the utility may recover the cost by passing it on to rate paying customers in that jurisdiction. On the other hand, if the charge is considered a franchise fee, it is an operating expense that can be recovered only by increasing costs systemwide. *See State ex rel. Pac. Tel. & Tel. Co. v. Dep't of Pub. Serv.*, 19 Wn.2d 200, 277-81, 142 P.2d 498 (1943).

¶4 The WUTC staff concluded that the costs imposed by the Nation were not franchise fees but essentially a business and occupation tax on the utilities. Accordingly, the staff recommended that the WUTC follow the precedent of

---

[1] "The Tribal Council finds that, by virtue of providing Utility Service to the residents of the Reservation and by obtaining easements to place facilities within such Reservation, Utilities have entered into consensual relationships with the Yakama Nation and its members . . . . As a sovereign nation, the Yakama Nation retains the authority to regulate the activities of entities that have entered into consensual relationships with the Yakama Nation and to regulate activities that threaten the political or economic interests of the Yakama Nation. The Tribal Council further finds that the health, safety, and welfare of the residents of the Reservation require that the Yakama Nation regulate and control the activities of Utilities operating on the Reservation." Clerk's Papers (CP) at 9. "Any Utility that is providing Utility Service to the residents of the Reservation as of the effective date of this Ordinance shall be liable for a franchise fee equal to three percent (3) of such Utility's Gross Operating Revenue." CP at 12.

similar utility tax extractions by the Lummi and Swinomish reservations and allow the costs to be passed on to all customers living within the reservation. *Brannon v. Qwest Corp.*, WUTC Docket Nos. UT-010988, TG-010989, UE-010990, UE-010995, UT-010966, TG-011084, 2002 Wash. UTC LEXIS 9 (Jan. 11, 2002).

¶5 The WUTC held open hearings on the matter and ultimately followed the advice of its staff, finding that the cost incurred by the utilities was a tax and the tax was presumed valid since no federal case law clearly invalidated it. The WUTC then spread the tax burden to all customers within the reservation, stating that it would amend its decision if a federal court later determined that such imposition on nonmembers was contrary to federal law. CP at 209.

¶6 Nonmembers challenged this decision. Petitioners Elaine Willman, a non-Indian who lives on fee land within the reservation, and the Citizens Stand Up! Committee argue that the WUTC acted unlawfully since it distributed an invalid tax. At most, they argue the cost incurred by the utilities should be considered a general operating expense, as a franchise fee, not a tax, thereby having the cost distributed among all ratepayers served by the utilities statewide, not just those within the reservation. They claim that the decisions by the WUTC are discriminating against them as nonmembers of the Nation.

¶7 Petitioners filed this action in Yakima County Superior Court, naming the WUTC, Cascade, and PacifiCorp as defendants. The utilities argued that the claim should be dismissed by summary judgment, in part because petitioners failed to join the Nation as an indispensable party to the action. The superior court dismissed the petition and denied all parties' motions, thereby also holding that the Nation was not an indispensable party to the action. Petitioners appealed to Division Three of the Court of Appeals, which affirmed the superior court. Elaine Willman and the Citizens Stand Up! Committee then petitioned this court for review. We affirm the Court of Appeals.

## DISCUSSION

¶8 WUTC regulates the utility services of Cascade and PacifiCorp in the state, including services within Indian reservations. Utilities are entitled to rates that are "just, fair, reasonable and sufficient." RCW 80.28.010(1). The WUTC, as an administrative agency, must perform its duties as prescribed by law. RCW 34.05.570(4)(b). In this case, these duties include deciding whether the utility expenses were prudent and whether the expenses were valid taxes that could be passed on to reservation customers.

¶9 A petitioner may challenge an agency's decision only if such a decision is (1) unconstitutional, (2) outside the statutory or legal authority of the agency, (3) arbitrary or capricious, or (4) taken by persons not authorized to take the action. RCW 34.05.570(4)(c). The petitioners in this case argue that the WUTC's decision to pass on the utility costs to all ratepayers within the reservation was "arbitrary and capricious." This court has found that an action is arbitrary or capricious only if it "is willful and unreasoning and taken without regard to the attending facts or circumstances." *Hillis v. Dep't of Ecology*, 131 Wn.2d 373, 383, 932 P.2d 139 (1997).

## Tax Invalidity Claim

¶10 Petitioners' main argument is that the WUTC unlawfully allowed the utilities to pass the Nation's tax on to their utility bills. The WUTC regulates utilities to ensure they incur only prudent expenses. Valid taxes imposed upon and paid by utilities are viewed as prudent expenses. *See State ex rel. City of Seattle v. Dep't of Pub. Utils.*, 33 Wn.2d 896, 902, 207 P.2d 712 (1949); *see also King County Water Dist. No. 75 v. City of Seattle*, 89 Wn.2d 890, 897-98, 577 P.2d 567 (1978). Further, unlike other business expenses, valid jurisdictional taxes may be passed directly to utility ratepayers within that jurisdiction. To be successful in their claim, petitioners must show that the WUTC acted in an

arbitrary or capricious manner when it decided that the taxes were presumptively valid.

¶11 Determining the validity of an Indian tax law involves complex issues of federal law. Since such analysis is outside the expertise and normal review of the WUTC, it has adopted a standard that *presumes validity* unless clearly shown to the contrary by federal law. Thus, the WUTC considers a tax a prudent expense unless the tax is "clearly invalid."

¶12 The petitioners in this case challenge this validity standard and argue in the alternative that the WUTC should presume *invalidity* when applying taxes to nontribal members. They base this assumption on a United States Supreme Court case, which held generally that tribes may not regulate or tax nonmembers. *Montana v. United States*, 450 U.S. 544, 563-67, 101 S. Ct. 1245, 67 L. Ed. 2d 493 (1981). A later case held that taxes by an Indian government on nonmembers within the reservation are "presumptively invalid." *Atkinson Trading Co. v. Shirley*, 532 U.S. 645, 659, 121 S. Ct. 1825, 149 L. Ed. 2d 889 (2001). Petitioners contend that in practicality, unless this presumption of invalidity is used by the WUTC, it will be difficult for nonmember ratepayers within a reservation to challenge a tax imposed upon them by a government they do not elect.

¶13 The WUTC and utilities argue that to follow the petitioners' reasoning would require the WUTC and the state courts to analyze the complexities of federal Indian tax law for every case. The application of Indian tax law on nonmembers is far from clearly decided in most cases. The *Montana* rule has exceptions, which allow Indian governments to tax nonmembers for conduct based on a consensual relationship between the tribe and the nonmember or based on actions that affect "the political integrity, the economic security, or the health or welfare of the tribe." *Montana*, 450 U.S. at 566. The extent of these exceptions continues to be debated by the federal courts. *See Burlington N. Santa Fe R.R. v. Assiniboine & Sioux Tribes*,

323 F.3d 767, 775 (9th Cir. 2003); *see also Big Horn County Elec. Coop., Inc. v. Adams*, 219 F.3d 944, 950-51 (9th Cir. 2000). This case is no different. In fact, a large portion of both parties' briefing and argument in this case debates the current status of federal law in this arena. Further muddying the analysis, the tax is being imposed by the tribes against the utilities, not the ratepayers directly.

¶14 We agree with the WUTC that instead of diving into the complexity of federal Indian law tax analysis, the WUTC and this court must primarily apply Washington state law, thereby requiring utilities to pay only prudent expenses. The WUTC did not act in an arbitrary or capricious manner in determining the tax was valid and thus a prudent expense. The WUTC's use of this standard and presumption of tax validity was not "willful and unreasoning and taken without regard to the attending facts or circumstances." *Hillis*, 131 Wn.2d at 383. By keeping in-depth federal Indian law analysis in the federal courts, the role of state administrative agencies is more clearly delineated.

¶15 Thus, for the purposes of Indian law taxation of utilities, a tax that is not "clearly invalid" is a prudent expense. This presumptive validity test still would allow for the petitioners to obtain a federal court disposition in their favor, thereby showing the tax is "clearly invalid," and, at which point, the WUTC must remove it from ratepayers' bills.

## Franchise Fee Claim

¶16 Petitioners claim that even if the cost imposed by the Nation was prudently paid, it was not a tax and should have been considered a franchise fee. As discussed above, the WUTC treats a franchise fee differently from a tax. A utility may pass a tax on to the bills of ratepayers within the taxing jurisdiction. A franchise fee, on the other

hand, is considered a cost of doing business and can be distributed only as an expense to all ratepayers served, systemwide. *See State ex rel. Pac. Tel. & Tel. Co.*, 19 Wn.2d at 277-81.

¶17 Petitioners argue that the WUTC's decision in this case to conclude the fees were a tax was both arbitrary and capricious. While aspects of the costs incurred by the utilities involve terms and actions consistent with a franchise fee, other indicia show the costs are a tax. For example, as in this case, a tax is an extraction of costs without mutual benefit for the parties. *See State ex rel. City of Seattle*, 33 Wn.2d at 902. Here, the utilities are compelled to pay the tax for no other benefit than to keep operating as a business.[2]

¶18 While there are elements of both franchise fees and taxes in these costs, the WUTC's decision to call it a tax was neither arbitrary nor capricious under RCW 34.05.570(4)(c). Accordingly, the petitioners' claim that the costs should be passed on to all Washington ratepayers instead of those within the Yakama reservation is denied.

## Tax Discriminatory Claim

¶19 Petitioners lastly claim that the tax passed on to them unfairly discriminates against them as non-Indian members of the reservation. Through their utility bills they are forced to pay the tax but receive no benefit and have no voice in the tribal government. While it is true RCW 80.28.090[3] prohibits the WUTC from showing any undue prejudice or advantage to any person or group through its actions, the statute does not relate to this case.

---

[2] Those utilities that do not enter into the franchise agreement will receive a daily fine of $1,000 and will eventually have their utility property removed from tribal land. CP at 12-13.

[3] "No gas company, electrical company or water company shall make or grant any undue or unreasonable preference or advantage to any person, corporation, or locality, or to any particular description of service in any respect whatsoever, or subject any particular person, corporation or locality or any particular description of service to any undue or unreasonable prejudice or disadvantage in any respect whatsoever." RCW 80.28.090.

¶20 RCW 80.28.090 is simply designed to ensure that all ratepayers in the same area pay the same rate and are not unfairly discriminated against in that manner. In the Yakama reservation, all residents are receiving the same utility services for the same price. Thus, petitioners' claim of discrimination is denied.

## Indispensable Party Claim

¶21 The utilities argue the petitioners' case should be summarily dismissed because they failed to join the Yakama Nation. The utilities contend the Nation is an indispensable party, and under CR 19(b) they are prejudiced by the Nation's absence. They further argue any ruling by this court that the tax is invalid is inadequate because the Nation, as a sovereign entity immune from state courts, is not bound by this ruling, while the utilities are. CR 19(b)(3); *see Aungst v. Roberts Constr. Co.*, 95 Wn.2d 439, 443, 625 P.2d 167 (1981). Since none of the petitioners' claims are valid, this joinder claim does not need to be addressed.

## CONCLUSION

¶22 The WUTC did not act in an arbitrary and capricious way by determining that the Nation's taxes were presumptively valid and thus a prudent expense paid by the utilities. Also, passing this tax on to ratepayers' utility bills was neither an unlawful decision nor a discriminatory action by the WUTC against non-Indian members of the reservation. The WUTC was successful in this appeal; therefore, petitioners' claim for attorney fees against the

WUTC, under RCW 4.84.350, is denied. We affirm the trial court[4] and the Court of Appeals.

ALEXANDER, C.J.; MADSEN, SANDERS, BRIDGE, CHAMBERS, and OWENS, JJ.; and HUNT and APPELWICK, JJ. Pro Tem., concur.

---

[4] In affirming the superior court, we affirm its ruling to strike evidence offered by the petitioners under RCW 34.05.570. This evidence related to declarations concerning the lack of tribal services and tribal government representation for nonmembers. It also included estimated costs to challenge the tax in federal court. The trial court's decision to exclude evidence not part of the administrative record that it deemed immaterial to the prior agency action was appropriate and thus is affirmed.