[No. 24996-4-III.   Division Three.   December 19, 2006.]

RICHARD ADAMS ET AL., *Individually and as Personal Representatives*, *Appellants*, v. THE CITY OF SPOKANE, *Respondent*.

*Stephen K. Eugster* (of *Eugster Law Office, PSC*), for appellants.

*James Craven, City Attorney*, and *Robert G. Beaumier, Jr., Assistant*, for respondent.

¶1 BROWN, J. — Today, we review a summary judgment dismissal granted to the city of Spokane (City). The City imposes a business and occupation tax of 17 percent[1] on the gross revenues of public utilities providing sewer and water services and solid-waste collection. Richard Adams and Robert Kroboth, individually and as personal representatives of the Mildred T. Kroboth Estate (collectively Adams) filed suit against the City, claiming the City was illegally

---

[1] The tax was 17 percent when Mr. Adams filed suit, but the City has since increased it to 20 percent of a utility's gross revenues. SPOKANE MUNICIPAL CODE (SMC) 08.10.030(A)(3), (4) and (7).

collecting money from its public utility ratepayers to pay the business and occupation tax imposed by the City on public utilities. On appeal, Adams mainly contends the City's utility departments illegally pass on City and State utility taxes to utility customers. We disagree, reject all other contentions, and like the trial court do not reach Adams' class action contentions. Accordingly, we affirm.

## FACTS

¶2 Adams questioned the tax effect of state and municipal utility taxes in the City's imposition of utility tax and filed a class action complaint. On cross-motions for summary judgment, the court granted the City's motion to dismiss Adams' complaint and awarded the City attorney fees and costs. Based on the dismissal, the court declined to consider Adams' motion for class certification. Adams sought direct review by our Supreme Court. The court transferred the case to the Court of Appeals.

## ANALYSIS

### A. SUMMARY JUDGMENT

¶3 The issue is whether the trial court erred in summarily dismissing Adams' suit alleging illegal tax collections and concluding the City's utility properly paid taxes based upon its gross receipts.

¶4 We review summary judgment orders de novo. *Drinkwitz v. Alliant Techsystems, Inc.*, 140 Wn.2d 291, 295, 996 P.2d 582 (2000). Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Id.* Argumentative assertions, speculative statements, and conclusory allegations do not raise material fact issues. *Ruffer v. St. Frances Cabrini Hosp. of Seattle*, 56 Wn. App. 625, 628, 784 P.2d 1288 (1990).

¶5 Adams argues since the utility must pay 17 cents for every dollar it collects, the customer is receiving only 83

cents worth of service. Further, since the customer is only getting 83 cents of service, but paying 17 cents tax, the effective tax rate is 20.48 percent, which is more than authorized by ordinance. Adams posits the City cannot pass on the tax to the ratepayers, the tax cannot be imposed on stormwater collection or on capital contributions, the tax was not disclosed to ratepayers, the tax was wrongly computed, and the City was thus unjustly enriched.

¶6 Adams incorrectly reasons the ratepayer is indirectly paying a business and occupation tax. The City imposes a business and occupation tax on a utility based on the utility's gross income. SMC (SPOKANE MUNICIPAL CODE) 08.10.030(A). Gross income is defined as "the total gross income received or earned as above noted on a cash receipt or on an accrual basis according to the method of accounting regularly employed by the taxpayer during the period for which the taxes are applicable." SMC 08.10.010(C)(2). The utility must pay the required percentage of each revenue dollar. But this does not mean the ratepayer does not receive what he or she paid for.

¶7 Valid taxes charged to utilities are considered overhead and are part of the cost of providing service to the ratepayer. *Willman v. Wash. Utils. & Transp. Comm'n*, 154 Wn.2d 801, 806, 117 P.3d 343 (2005). A city may thus provide for the cost of paying taxes in its rate structure. The rates are set by ordinance. The utility is not adding the tax onto the ratepayer's bill but is paying the tax based on its gross receipts. Adams provides no evidence the tax is included within the rate set by ordinance. In other words, the *utility* is not being fully reimbursed for the costs of its service, since it has to pay a percentage of its gross revenue in taxes.

¶8 Adams claims the ratepayer is not receiving the benefit of the bargain. We are not persuaded that the ratepayer is receiving 83 cents of service for every dollar spent because the tax is not levied against the ratepayer.

¶9 Likewise, the City may impose the tax on stormwater charges. SMC 08.10.030(A)(4) imposes a tax on operating a

public wastewater and treatment system. As the City points out, historically, stormwater charges were included as part of the sewer rates, but the utility recently decided to charge stormwater rates separately. The collection of stormwater is part of the wastewater and treatment system, and thus is validly taxed under the City ordinance establishing a tax on sewer utilities.

¶10 Adams argues the City cannot tax any portion of its utilities' gross revenues attributable as a capital contribution. But revenues collected as service rates by a public utility can be attributed to capital contribution and are properly considered gross revenue for purposes of a utility tax. *City of Kennewick v. State*, 67 Wn.2d 589, 593-94, 409 P.2d 138 (1965).

¶11 Next, Adams argues the public utilities fail to disclose to the ratepayer the 17 cents tax. But, as noted, the ratepayer is not paying the tax, and no requirement exists for the utility to disclose to the ratepayer the amount of tax the utility is required to pay on its gross revenue.

¶12 Adams argues grossing-up is prohibited. "Grossing-up" is a tax term for the practice of including in the tax base the amount collected from customers for the purpose of paying taxes. Adams overlooks that the utility is the taxpayer and is permitted to pass on its tax expense to the ratepayers. *Willman*, 154 Wn.2d at 808.

¶13 Adams argues the tax violates equal protection rights because the utility tax and the tax imposed on Avista, a privately owned electric company, is not the same. State action violates equal protection rights if it treats similarly situated individuals disparately. *State v. Osman*, 157 Wn.2d 474, 484, 139 P.3d 334 (2006). Adams, however, presents evidence outside the court's record that this court will not review. RAP 10.3(a)(5). Based on our record, no equal protection violation is shown.

¶14 In sum, no evidence shows the City was unjustly enriched as alleged by Adams. We hold the court did not err in granting summary judgment.

## B. Class Certification

■ ¶15 A court's decision to certify a class is discretionary and will not be overturned absent a manifest abuse of discretion. *Eriks v. Denver*, 118 Wn.2d 451, 466, 824 P.2d 1207 (1992). "A court abuses its discretion when its decision is based on untenable grounds or is manifestly unreasonable or arbitrary." *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 683, 15 P.3d 115 (2000). Considering our reasoning above, Adams' class certification issue is moot. *Sheehan v. Cent. Puget Sound Reg'l Transit Auth.*, 155 Wn.2d 790, 807, 123 P.3d 88 (2005).

## C. Attorney Fees

■ ¶16 Adams requests attorney fees under the common fund doctrine. The common fund doctrine "is recognized to provide a basis for an award of reasonable attorney fees beyond the mere creation or preservation of a monetary fund where a litigant confers substantial benefits on an ascertainable class." *City of Sequim v. Malkasian*, 157 Wn.2d 251, 285, 138 P.3d 943 (2006) (footnote omitted). Because we have rejected Adams' assignments of error and no substantial benefits have been derived, we deny attorney fees.

¶17 Affirmed.

Sweeney, C.J., and Kulik, J., concur.

Reveiw denied at 161 Wn.2d 1019 (2007).