IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| TREVI LLC, a Washington limited liability company, | ) ) ) | No. 38366-1-III |
| Appellant, | ) ) | |
| v. | ) ) | |
| JEFF GRASS and SUSAN GRASS, husband and wife, | ) ) ) | UNPUBLISHED OPINION |
| Respondents, | ) ) ) | |
| FRONTIER TITLE AND ESCROW CO., INC., a Washington corporation, | ) ) ) | |
| Defendant. | ) ) | |

PENNELL, J. — In 2019, Trevi LLC, owned by Kevin Wen and Sherry Xiao,

entered into a purchase and sale agreement (PSA) for a resort property owned by Susan

and Jeff Grass. The sale failed after several extensions of the closing date and the parties

each claimed the other was at fault. After Trevi filed suit, the trial court ordered summary

judgment in favor of the Grasses. We reverse in part.

FACTS

Susan and Jeff Grass owned a resort near Blue Lake in Grant County. The Grasses

sought to sell the resort and in 2019 they entered into a PSA with Trevi, a limited liability

company owned by Kevin Wen and Sherry Xiao. The PSA specified a sale price of $1,250,000 with $500,000 down, including $12,500 in earnest money. Closing was scheduled for January 3, 2020.

The parties' PSA included several standard provisions. The PSA stated the Grasses were to clear all liens and encumbrances on the resort at the time of closing. In addition, the PSA provided the Grasses would retain the $12,500 earnest money deposit if Trevi failed to complete the purchase without legal excuse. Conversely, if the Grasses breached, Trevi had the right to "terminate [the PSA] and recover all earnest money or fees paid by [Trevi] whether or not the same are identified as refundable or applicable to the purchase price." Clerk's Papers (CP) at 16.[1] The PSA provided for reasonable attorney fees and expenses to be awarded to the prevailing party in case of a suit between the buyer and the seller concerning the agreement.

On January 2, the parties entered into an addendum to the PSA wherein they directed escrow to immediately release $50,000 of earnest money to the Grasses, and agreed the date of closing would be extended to February 14. The addendum stated the $50,000 was "non-refundable." *Id*. at 40. The parties subsequently agreed to extend the

---

[1] The PSA provided Trevi the alternative remedy to sue for specific enforcement within 60 days.

closing date to February 19, then to February 26, and ultimately to June 1. However, June 1 arrived and the parties did not close.

Trevi filed suit in July 2020, seeking recovery of the $12,500 earnest money deposit and the $50,000 payment. Trevi asserted theories of breach of contract, unjust enrichment, and rescission. The Grasses answered by denying liability and asserting counterclaims contending Trevi was the one in breach and that the $50,000 was nonrefundable.

The Grasses subsequently moved for summary judgment on all claims and counterclaims. In support of their motion, the Grasses submitted declarations explaining Trevi had suffered business losses as a result of the COVID-19 pandemic and was the party responsible for being unable to close the PSA. The Grasses also explained the $50,000 payment was made in exchange for extending the original closing date. The money was intended to help the Grasses with ongoing business expenses, given the PSA restricted the Grasses' ability to take new rental deposits during the pendency of the sale. The Grasses claimed the $50,000 was nonrefundable and neither dependent nor conditioned on the sale closing.

Trevi disagreed with the Grasses' factual claims. According to Trevi, the Grasses were the party in breach because they lacked funds to pay off liens and deliver marketable

title. Trevi also disputed the Grasses' claim that the $50,000 was nonrefundable. Trevi

claimed the parties had an oral agreement to treat the $50,000 as a loan that would be

repaid if the resort sale did not go through. According to Trevi, the addendum to the

PSA stated the $50,000 was nonrefundable only because the Grasses needed proof of

unencumbered assets to make a down payment on a home.

In support of the foregoing contentions, Trevi provided a declaration from Kevin

Wen, which stated:

- "[The Grasses] wanted to use the earnest money as a down payment on the

  home purchase. [The Grasses] advised us they needed to show the down

  payment 'free and clear', so they asked us to state that the earnest money

  was 'non-refundable.' It was always agreed that if the [Grasses] did not

  close the resort sale, they would have to repay the earnest money advance."

  *Id*. at 121.

- "It was agreed between [the Grasses] and Trevi that if, for any reason, the

  sale of the Resort did not close or the sale of the home they were purchasing

  did not close, the [Grasses] would have to repay to Trevi the $50,000

  advance." *Id*.

- On February 14, just before closing, Frontier Title, the closing agent, informed Mr. Wen the Grasses would be unable to close because of encumbrances and liens on the property. The seller's financial problems were the cause of the further extensions to the closing date.

- In April 2020 the Grasses "expressed concern" to Mr. Wen that they "could no longer continue with the proposed sale and would need to terminate it." *Id.* at 122. The Grasses admitted they "needed to repay the borrowed earnest money but did not have the funds available." *Id*.

- As June 1 approached, the Grasses informed the closing agent they did not have the funds needed to close and refused to close.

- Trevi had been ready and able to close the sale on June 1 but the Grasses lacked the necessary funds and refused to close. The Grasses had a previously undisclosed second mortgage on the property that they were unable to pay off.

In response to Trevi's submission, the Grasses filed a declaration from Susan Grass, alleging Mr. Wen lacked personal knowledge of the parties' discussions regarding closing. According to Ms. Grass, most communications were between herself and Sherry Xiao. Ms. Grass also declared that, contrary to Mr. Wen's representations, the closing

5

extensions had nothing to do with clearing liens and encumbrances off the property

and the Grasses intended "to pay off any and all liens and encumbrances at closing."

*Id.* at 208.

The trial court granted summary judgment to the Grasses. The court explained

that Trevi's evidence regarding the $50,000 payment was inadmissible as parol evidence.

In addition, the trial court ruled Trevi lacked any admissible, nonhearsay evidence that

the Grasses had violated the PSA. The court determined the Grasses were to receive the

$12,500 in earnest money that had been held in escrow and that they could retain the

previously released $50,000.

Trevi filed a timely appeal.

## ANALYSIS

Summary judgment allows for pretrial resolution of legal claims when there are no

genuinely contested material facts for trial. Our review of summary judgment is de novo.

*Colo. Structures, Inc. v. Blue Mountain Plaza, LLC*, 159 Wn. App. 654, 661, 246 P.3d

835 (2011). Review requires construing the factual record in the light most favorable to

the party opposing summary judgment. *Id.* All evidence considered on summary judgment

must meet the standards for admission at trial. CR 56(e); *see also SentinelC3, Inc. v.

Hunt*, 181 Wn.2d 127, 141, 331 P.3d 40 (2014). "Argumentative assertions, speculative

statements, and conclusory allegations do not raise material fact issues." *Adams v. City of Spokane*, 136 Wn. App. 363, 365, 149 P.3d 420 (2006).

*The $12,500 earnest money deposit*

The parties disagree as to who was at fault for the failed PSA. According to the Grasses, Trevi failed to close based on its financial struggles attributable to the COVID-19 pandemic. Trevi claims the Grasses were the ones at fault because they were unable to clear financial encumbrances on the resort in time for closing. Typically, this type of finger-pointing would require resolution by a finder of fact at trial. However, the Grasses claim—and the trial court agreed—that Trevi lacked admissible evidence showing the Grasses were at fault for the failed sale. Trevi responds that at least some of the evidence offered in opposition to summary judgment was admissible. We agree with Trevi.

The evidence Trevi submitted in opposition to summary judgment consisted of a written declaration by Kevin Wen. As noted by the Grasses and the trial court, much of Mr. Wen's testimony constituted improper speculation or hearsay. But not everything in Mr. Wen's declaration was inadmissible. Specifically, Mr. Wen testified that the Grasses expressed to him that they "could no longer continue with the proposed sale and would need to terminate it." CP at 122. Mr. Wen added that the Grasses "advised me that they would not likely be able to meet the conditions of the sale." *Id*. Statements made by a

party-opponent are not hearsay. ER 801(d)(2). Taken in the light most favorable to Trevi, the Grasses' purported admissions raise a genuine issue of material fact regarding who was at fault for the failed sale.

The Grasses challenge the statements attributed to them, claiming their communications about the PSA only took place with Sherry Xiao. But this is an issue of credibility, not admissibility. The question of whether there were ever any conversations between Mr. Wen and the Grasses is a factual issue that must be resolved at trial.

The Grasses also suggest that Mr. Wen's declaration is inadmissible because it improperly contradicts the earlier statement of Ms. Xiao, who is also a speaking agent for Trevi. *See McCormick v. Lake Wash. Sch. Dist.*, 99 Wn. App. 107, 111, 992 P.2d 511 (1999). But the no-contradiction rule relied on by the Grasses applies only to affidavits that contradict "clear sworn testimony." *Safeco Ins. Co. of Am. v. McGrath*, 63 Wn. App. 170, 174-75, 817 P.2d 861 (1991). Ms. Xiao's unsworn e-mail statement does not meet this standard.

The record reveals genuine issues of material fact regarding who was at fault for the failed PSA. Summary judgment on this issue is reversed.

*The $50,000 addendum payment*

The parties agree that once the $50,000 payment was released to the Grasses on January 2, 2020, it no longer constituted earnest money and therefore was not governed by the PSA's earnest money provision. The Grasses claim the $50,000 was a nonrefundable payment, made in consideration for the Grasses' agreement to delay closing. According to Trevi, the $50,000 was a loan, governed by an oral promise for repayment should the resort's sale not go through. The trial court rejected Trevi's construction of the parties' agreement as violating the parol evidence rule. We agree with the trial court.

Parol evidence refers to evidence extrinsic to the written terms of a contract. In Washington, parol evidence is admissible to discern the intent of the parties when a contract is missing certain terms or is otherwise unclear. *See DePhillips v. Zolt Constr. Co.*, 136 Wn.2d 26, 32, 959 P.2d 1104 (1998). But parol evidence is not permissible "for the purpose of varying the terms of a written contract." *U.S. Life Credit Life Ins. Co. v. Williams*, 129 Wn.2d 565, 569, 919 P.2d 594 (1996). In interpreting a contract, "'[i]t is the duty of the court to declare the meaning of what is written, and not what was intended to be written.'" *Condon v. Condon*, 177 Wn.2d 150, 162, 298 P.3d 86 (2013) (quoting *J.W. Seavey Hop Corp. v. Pollock*, 20 Wn.2d 337, 349, 147 P.2d 310 (1944)).

Trevi seeks to circumvent the parol evidence rule in order to explain that the $50,000 addendum payment was not really nonrefundable. According to Trevi, the parties worded the addendum to disguise the fact that the $50,000 was actually a loan that would need to be repaid should the PSA not go through. Trevi claims it agreed to use deceptive language in the addendum as an accommodation to the Grasses so the Grasses would be able to represent that they owned the $50,000 free and clear for purposes of financing a new home.

Trevi's workaround fails. The extrinsic evidence proffered by Trevi improperly contradicts the plain terms of the parties' agreement. The parol evidence rule does not allow for the admission of extrinsic evidence in order to show that what was said in a contract is actually a lie. If the parties intended to enter into a deceptive written agreement, mischaracterizing the nature of the $50,000 payment, they are stuck with that agreement.

*Equitable claims*

In addition to its claims regarding breach of the PSA, Trevi sought relief under equitable theories of unjust enrichment and rescission.

"Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it."

*Young v. Young*, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008). Unjust enrichment does not apply when the parties' dispute is governed by a valid contract. *See Bircumshaw v. Wash. State Health Care Auth.*, 194 Wn. App. 176, 205, 380 P.3d 524 (2016). Here, the parties had a contractual relationship and no benefits were conferred outside of that relationship. Trevi's claim for damages under a theory of unjust enrichment fails. *Id.* at 205-06.

Trevi has also asserted relief under a theory of rescission. Rescission is not a theory of liability. It is an equitable remedy that allows the court to restore the parties to their precontract position. *Willener v. Sweeting*, 107 Wn.2d 388, 397, 730 P.2d 45 (1986). Because we are reversing the order of summary judgment on Trevi's breach of contract claim, rescission remains a possible remedy. We therefore reverse the trial court's summary judgment order on Trevi's claim for rescission.

## APPELLATE ATTORNEY FEES

Both parties seek attorney fees on appeal pursuant to the terms of the PSA, which provides for an award of reasonable attorney fees to the prevailing party in a legal dispute. Because we are remanding for further proceedings, prevailing party status has not been fully settled and an award of fees at this point would be premature. Reasonable appellate fees may be pursued in the trial court on remand pursuant to the terms of the PSA. RAP 18.1(i).

CONCLUSION

We affirm in part and reverse in part. This matter is remanded for further proceedings regarding breach of the PSA and disbursement of the $12,500 in earnest money.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Fearing, J.